1

2

3

4

5

6          UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
7              AT SEATTLE

8  KEVIN OLDHAM,                      )
                                      )
9              Plaintiff,             )      Case No. C09-954-BAT
                                      )
10       v.                           )      **ORDER REVERSING AND**
                                      )      **REMANDING CASE FOR**
11 MICHAEL J. ASTRUE, Commissioner of the )  **FURTHER ADMINISTRATIVE**
   Social Security Administration,    )      **PROCEEDINGS**
12                                    )
               Defendant.             )
13 _____)

14        Plaintiff Kevin Oldham seeks review of the denial of his application for disability

15 insurance benefits by the Commissioner of the Social Security Administration, after a hearing

16 before an administrative law judge ("ALJ"). Dkt. 1. For the reasons below, the Court orders the

17 Commissioner's decision be **REVERSED** and **REMANDED** for further administrative

18 proceedings.

19             **I.  FACTUAL AND PROCEDURAL HISTORY**

20        Plaintiff is 40 years old, has an 11th grade education, and received special education

21 during his entire school career. Tr. 138, 207. His past work experience includes stocker,

22 dishwasher, pricer, cook, construction worker, and dishwasher. Tr. 150. On August 3, 2006, he

23 applied for disability insurance benefits alleging disability as of April 15, 2005. Tr. 8, 129. His

**ORDER REVERSING AND REMANDING**
 **CASE FOR FURTHER ADMINISTRATIVE**
 **PROCEEDINGS** – 1

1 application was denied initially and on reconsideration.  *Id.*  After a hearing conducted on

2 January 6, 2009, the ALJ issued a decision finding plaintiff not disabled.  Tr. 5-22.

3    Applying the five-step sequential evaluation process[1] for determining whether a claimant

4 is disabled, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity

5 since the alleged onset date of April 15, 2005.  Tr. 10.

6    At step two, the ALJ found plaintiff had the following severe impairments:  bipolar

7 disorder, sleep disorder, and early osteoarthritis.  *Id*.

8    At step three, the ALJ found plaintiff's  impairments did not met or equal the

9 requirements of a listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 12.

10    The ALJ found that through the date last insured, plaintiff had the residual functional

11 capacity ("RFC") to perform:

12         sedentary work as defined in 20 CFR 404.1567(a), including the
        ability to lift and/or carry 10 pounds occasionally and less than 10
13        pounds frequently, to stand and/or walk for a total of about six
        hours in an eight-hour day.  The claimant has the mental residual
14        functional capacity to adequately perform the mental activities
        generally required by competitive, remunerative work as follows:
15        to understand, remember, and carry out simple instructions; the
        average ability to perform sustained work activities (i.e. can
16        maintain attention and concentration, persistence and pace) in an
        ordinary work setting on a regular and continuing basis (i.e. eight
17        hours a day, for five days a week, or an equivalent work schedule)
        within customary tolerances of employers' rules regarding sick
18        leave and absence.  The claimant can make judgments
        commensurate with the functions of work, i.e., simple work-related
19        decisions; respond appropriately to supervision, co-workers, and
        work situations; and deal with changes all within a routine work
20        setting.  The claimant can perform work that does not require
        dealing with the general public as in waiting on customers in a
21        sales position; incidental contact with the general public is not
        precluded so long as it is not an essential element of the work
22        process.

23 ────────────
[1] *See* 20 C.F.R. §§ 404.1520, 416.920.
**ORDER REVERSING AND REMANDING**
 **CASE FOR FURTHER ADMINISTRATIVE**
 **PROCEEDINGS** – 2

Tr. 13-14.

At step four, the ALJ found plaintiff could not perform past relevant work. Tr. 21.
At step five, the ALJ found plaintiff could work as an "assembler," a job that exists in significant
numbers in the national economy and that plaintiff was therefore not disabled. Tr. 21-22. The
Appeals Council denied review of the ALJ's decision, making it the Commissioner's final
decision under 42 U.S.C. § 405(g). Tr. 1-4.

## II. STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of disability benefits when the ALJ's
findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g);
*Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and
resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of
the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence
is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
must be upheld. *Id.*

## III. DISCUSSION

**A.     Plaintiff's ability to follow simple instructions**

Examining psychologist Lisa Cowden, Ph.D. opined plaintiff is unable to follow simple
instructions. Tr. 206-209. In general, more weight should be given to the opinion of a treating
source than to a non-treating source, and more weight to the opinion of an examining source than
to a non-examining source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not
contradicted by another physician, a treating or examining physician's opinion may be rejected
only for "clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396

**ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS** – 3

(9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for doing so."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff contends the ALJ failed to provide specific and legitimate reasons to reject Dr. Cowdin's opinion.  Dkt.  11 at 5.  The Court disagrees.  First, Dr. Cowden opined plaintiff "was not able to follow simple instructions" based on her observation that he "was unable to follow simple three-step directions.  He was asked to take a paper in his right hand, fold it in half and place it on the floor, and he took the paper in his left hand, folded it and placed it on the floor."  Tr. 206.  The ALJ, however, did not find plaintiff could perform three step instructions.  Rather, he found "State agency psychologist consultants reviewed the record and found that the claimant was able to understand, recall, and execute short and simple instructions, such as **one and two step** instructions."  Tr. 19 (emphasis added).

Second, the ALJ's finding is supported by substantial evidence in the record.  Dr. Cowden's opinion is premised on the inability to perform three step instructions; she did not find plaintiff was unable to follow one or two step instructions.  This is consistent with the opinions of examining doctors Dr. William Wilkenson, Ed.D. and Dr. Shawn Kenderline, Ph.D. who found that while plaintiff has some impairment in following three step instructions, he has no impairment in following simple one to two step instructions.  Tr. 313, 320.  Dr. Renee Eisenhauer Ph.D. also opined plaintiff "is able to follow at least one or 2 step instructions."  Tr. 213.

Third, the job the vocational expert opined plaintiff could perform does not require the ability to perform three step instructions.  The vocational expert testified plaintiff could perform

work as an assembler under DOT 713.687-018.  This is a position that requires the ability to "carry out simple one–two step instructions, not three-step instructions. *Id. see also* Dictionary of Occupational Tiles (4th Ed., Rev. 1991), Appendix C.

Accordingly, the Court finds substantial evidence[2] supports the ALJ's finding that plaintiff has the ability to follow simple one or two step instructions.

**B.      Plaintiff's Global Assessment Score ("GAF") and residual functional capacity**

Dr. Cowden assigned plaintiff a GAF score of 50, indicating he has serious symptoms or serious impairments in social, occupational or school functioning[3].  Tr. 208.  Plaintiff argues the ALJ erred in finding plaintiff functions at higher than GAF score 50.  Dkt. 11 at 10.  Essentially, this argues the ALJ's residual functional capacity assessment erroneously fails to account for all of plaintiff's limitations.

The Commissioner argues the ALJ did not err as Dr. Wilkerson assigned plaintiff a GAF score of 55, indicating moderate problems and limitations.  Dkt. 13 at 4.  Whether plaintiff functions at GAF 50 or 55 does not resolve whether he is able to work.  A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings; 66 Fed.Reg. 50764-5 (2000).  A GAF score of 50, if credited, would not require a finding of disability.  Likewise, a GAF score of 55 does not mean plaintiff is able to perform any

---

[2] The Court agrees with plaintiff that the ALJ erred in equating activities such as cooking, using the computer and playing video games with the ability to follow simple instructions.  Dkt. 11 at 7-8.  The record does not establish these activities involve following instructions, or that if they do, what type of instructions.  Accordingly, the Court concludes these activities are not specific and legitimate reasons to reject Dr. Cowden's opinion that plaintiff cannot follow simple instructions.  However, because the ALJ did provide a specific and legitimate reason to reject Dr. Cowden's opinion, the Court finds that this error was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

[3] *American Psychiatric Ass'n. Diagnostic and Statistical Manual of Mental Disorder*, 34 (Text Rev., 4th Ed. 2000).

**ORDER REVERSING AND REMANDING**
 **CASE FOR FURTHER ADMINISTRATIVE**
 **PROCEEDINGS** – 5

1    work without limitations.

2         As noted above, plaintiff's GAF score argument essentially boils down to whether the

3    ALJ erred by failing to incorporate all of plaintiff's limitations into the residual functional

4    capacity assessment.  In pertinent part, the ALJ found plaintiff has the RFC to:

5              adequately perform the mental activities generally required by
               competitive, remunerative work as follows: to understand, remember,
6              and carry out simple instructions; the average ability to perform
               sustained work activities (i.e. can maintain attention and concentration,
7              persistence and pace) in an ordinary work setting on a regular and
               continuing basis (i.e. eight hours a day, for five days a week, or an
8              equivalent work schedule) within customary tolerances of employers'
               rules regarding sick leave and absence.  The claimant can make
9              judgments commensurate with the functions of work, i.e., simple work-
               related decisions; respond appropriately to supervision, co-workers, and
10             work situations; and deal with changes all within a routine work setting.

11   Tr. 13.

12        This finding is not supported by substantial evidence.  Dr. Cowden who scored plaintiff at

13   GAF 50 opined "[h]e may be able to adapt to a work environment which involves limited contact

14   with coworkers."  Tr. 209.  Dr. Kenderline opined plaintiff had marked limitations in the ability to

15   1) relate appropriately with co-workers and supervisors, and 2) respond appropriately to and

16   tolerate the pressure and expectations of a normal work setting.  Tr. 313.  Dr. Wilkerson opined

17   plaintiff has "moderate+" limitations in the ability to relate appropriately with co-workers and

18   supervisors, and respond appropriately to and tolerate the pressure and expectations of a normal

19   work setting.  Tr. 320.

20        Dr. Eisenhauer opined plaintiff had moderate limitations in his ability to 1) maintain

21   attention and concentration for extended periods; 2) perform activities within a schedule, maintain

22   regular attendance, and be punctual within customary tolerances; 3) complete a normal workday

23   and workweek without interruptions from psychologically based symptoms and to perform at a

**ORDER REVERSING AND REMANDING**
 **CASE FOR FURTHER ADMINISTRATIVE**
 **PROCEEDINGS** – 6

consistent pace without an unreasonable number and length of rest periods; 4) accept instructions and respond appropriately to criticism from supervisors; 5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 6) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and 7) respond appropriately to changes in the workplace.  Tr. 211-213.  Dr. Eisenhauer also stated plaintiff "reports that he is irritable and that he gets angry with people and is uncomfortable in crowds. Due to this, it is better that the claimant does not work closely with the public, coworkers, or supervisors." Tr. 214.

The ALJ's RFC assessment ignores these limitations and instead concludes plaintiff  could "perform sustained work activities (i.e. can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence . . . The claimant can make judgments commensurate with the functions of work, i.e., simple work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes all within a routine work setting."  Tr. 13.

The ALJ's failure to include these limitations in plaintiff's RFC is not harmless.  Indeed, the vocational expert's opinion that plaintiff has the RFC to perform work as an assembler is premised on a hypothetical that did not include any of the limitations noted by Dr. Cowden, Dr. Eisenhauer, Dr. Kenderline, or Dr. Wilkerson except for the limitation that plaintiff not work directly with the public.  Tr. 51-52.

An ALJ posing a hypothetical question to a vocational expert "must set out all the limitations and restrictions of a particular claimant." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  An ALJ "need not include all claimed impairments in his hypotheticals [but] he

must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in his hypothetical." *Ilight v. Social Sec. Admin.,* 119 F.3d 789, 793 (9th Cir. 1997).  If the assumptions in the hypothetical are not supported by the record, or do not reflect all of the claimant's limitations, the opinion of the vocational expert that claimant has a residual functional capacity has no evidentiary value.  *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Here, vocational expert Leda Brookshire testified at the hearing before the ALJ.  Tr. 23. She opined plaintiff could work as an "assembler" based on a hypothetical that did not include all of the limitations noted above.  Tr. 52-53.  When the vocational expert was asked whether her opinion would change if the hypothetical person had "markedly below average ability to sustain work activities . . . would sporadically miss work as frequently as four to eight hours in a 40-hour work week . . . would that prevent competitive employment in the jobs you've identified," she answered, "yes sir it would . . . this would far exceed the tolerance for absenteeism."  Tr. 53.

Accordingly, the Court concludes the ALJ erred in failing to include without explanation, in his RFC determination the limitations set forth by the medical sources above.  The Court also concludes the ALJ erred in concluding plaintiff could perform as an assembler because that conclusion was based on a hypothetical that did not include all of plaintiff's limitations.

**D.      Lay Witness Francis Oldham**

Ms. Oldham is plaintiff's mother.  Plaintiff argues the ALJ erred in finding her statement not "probative evidence regarding claimant's functional limitations."  Dkt. 14 at 5; Tr. 20.  Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing do.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The record supports the ALJ's findings.  In her "function report adult - third party,"  Ms. Oldham noted she was not sure if plaintiff could "pay attention," does "ok" on following instructions, does not do well getting along with bosses, was not sure whether plaintiff had been fired because of problems getting along with others, and did not handle stress well.  Tr. 163-64.  She also reported he could "fly off the handle" and that the "littlest things can set him off" but these comments were not made in connection with the workplace.  Tr. 168.  Accordingly the Court finds the ALJ's assessment of the witness is supported and that the Court cannot reweigh the evidence nor substitute its judgment for that of the Commissioner.

**E.    Lay witness Lorene Thody**

The Commissioner concedes the ALJ erred in failing to comment on the evidence presented by Ms. Thody, plaintiff's girlfriend.  Dkt. 13 at 11.  The Commissioner contends this error is harmless.  *Id.*  The Court disagrees.  As the ALJ on remand must consider all relevant evidence in assessing plaintiff's RFC, the ALJ should consider Ms. Thody's evidence.

## V.  CONCLUSION

For the foregoing reasons, the Court orders that this case be **REVERSED** and **REMANDED**.  On remand, the ALJ should include in his RFC assessment the limitations set forth by the medical sources noted above.  If the ALJ does not accept the medical sources' opinions that plaintiff has  functional limitations regarding relating appropriately with co-workers and supervisors;  responding appropriately to and tolerate the pressure and expectations of a normal work setting; working within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with

1  coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining

2  socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the

3  ALJ must explain that decision and identify the evidence he relies on to do so.  The ALJ should

4  also consider Ms. Thody's evidence.  And the ALJ should obtain additional vocational testimony

5  to determine whether there are any jobs that plaintiff can perform in view of all of his limitations

6  and, if not, whether there exists in significant numbers in the national economy a job that

7  plaintiff can perform.

8  　　　　DATED this 17th day February, 2010.

9

10

11  _____
     BRIAN A. TSUCHIDA
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

**ORDER REVERSING AND REMANDING
 CASE FOR FURTHER ADMINISTRATIVE
 PROCEEDINGS** – 10